IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| OMAHA COLD STORAGE TERMINALS, INC., ) ) ) Plaintiff, ) ) vs. ) ) THE HARTFORD INSURANCE ) COMPANY, ) ) Defendant and Third Party ) Plaintiff, ) ) vs. ) ) FISCO, INC., ) ) Third Party ) Defendant/Plaintiff, ) ) vs. ) ) STRUCTURAL SYSTEMS DESIGN, ) INC. ) ) Fourth Party Defendant. ) | 8:03CV445  MEMORANDUM AND ORDER |

This matter is before the court on the cross motions for partial summary judgment filed by plaintiff, Omaha Cold Storage Terminals, Inc. ("OCS"), and defendant/third party plaintiff, The Hartford Insurance Company ("Hartford"), Filing Nos. 72 and 77. Also before the court are the cross motions for summary judgment filed by third party defendant/plaintiff, Fisco, Inc. ("Fisco"), and by fourth party defendant, Structural Systems Design, Inc. ("SSD"), Filing Nos. 57 and 68. The court, having considered the parties' motions, responses, replies, and the record and relevant law, now determines that: (1) OCS' motion should be granted in part and denied in part; (2) Hartford's motion should be denied; (3) Fisco's motion should be denied; and (4) SSD's motion should be granted.

**Undisputed Facts**

This case arises out of an insurance contract dispute. In 1999, OCS, a Nebraska corporation, owned a warehouse facility in Fort Dodge, Iowa, consisting of four freezer rooms. *See* Filing No. 74, Ex. 13 at 2. In March 1999, OCS purchased an insurance policy for its warehouse from Hartford, a Connecticut corporation. *See* Complaint at ¶ 3.

On or about June 25, 1999, a floor heating unit malfunctioned in one of the freezer rooms which allowed frost to develop, resulting in damage to the floor plate, underlayment and foundation of the warehouse. *Id.* at ¶¶ 7-8. On July 7, 1999, OCS notified Hartford of the problem and Hartford initiated an investigation. *Id.* On October 4, 1999, Hartford hired Crocker Claims Service to investigate the loss. *See* Filing No. 75, Ex. 5 at 2. Crocker Claims Service reported to Hartford that "the floor is not only heaved, but is cracked in a number of locations throughout the 200 x 400 square foot freezing facility" due to the mechanical malfunction of the heating unit. *Id.* Crocker Claims Service's report included: "We are also concerned that the problem could take a turn to the worse, particularly if the heaved floor pushes against the I-beams it will in turn either cause a problem with the roof or possibly push outward causing a problem with the joisted walls." *Id.*

On June 13, 2000, Hartford's producing agent, Larry Johnson, wrote and advised Hartford:

> The rise of the affected floor area has pushed up the vertical beams supporting the roof. These beams are designed to "float" independently of the floor, but the floor damage is so severe that some of the beams no longer float and have raised the center horizontal roof support beam as much as 20" to 30" creating tremendous pressure on the roof structure. While no roof damage is readily apparent, there may be damage. OCS has instructed the contractor to do whatever necessary to relieve the pressure on the roof while preserving the structural integrity of the building.

*See* Filing No. 74, Ex. 9 at 1. On July 20, 2000, Senior Property General Adjustor Greg DeBoer wrote to Hartford: "As of July 19, 2000, the undersigned [Greg DeBoer] has reassigned this claim. Also, this claim has now risen to the $850,000.00 mark and may continue to grow. The Hartford firmly believes that the proximate cause of loss regarding this claim is the mechanical breakdown of the blower motor." *See* Filing No. 75, Ex. 4 at ¶ 6.

On or about August 2000, Fisco, a Nebraska contractor who specializes in commercial freezers, received authorization to repair the warehouse. *See* Filing No. 74, Ex. 8, Ex. 13 at 4, and Ex. 17. On September 1, 2000, SSD, a Nebraska corporation, forwarded a document entitled "An Agreement for the Provisions of Limited Professional Services" to Fisco whereby SSD offered to provide engineering services to Fisco in assisting with the repairs of the warehouse. *See* Filing 57, Statement of Undisputed Facts in Support of Motion for Partial Summary Judgment at ¶¶ 11-13. Fisco signed the agreement, which stated that "if accepted please sign and return one copy." *See* Filing No. 58, Ex. A. Fisco, however, did not return the copy of the agreement to SSD. *See* Filing 57, Statement of Undisputed Facts in Support of Motion for Partial Summary Judgment at ¶¶ 14-17. Nevertheless, SSD completed time sheets documenting 228 hours of work at the warehouse before October 1, 2000. *Id.*

On October 2, 2000, however, after repairs had commenced, the main support structure of the warehouse collapsed. *See* Complaint at ¶ 12. On July 1, 2002, Hartford paid for some damages to OCS' freezer rooms. *Id.* at ¶ 14. Hartford, however, refused to pay for damages caused by the collapse of the warehouse. *See* Filing No. 74, Ex. 16 at 4.

On April 15, 2002, OCS filed a suit against Hartford alleging breach of contract. Specifically, OCS alleged that Hartford is liable, under the terms of the insurance policy, for all the damages suffered by the warehouse, including those arising out of the building's collapse, as well as for OCS' lost income.

On January 7, 2004, Hartford, in turn, filed an Amended Third Party Complaint (Filing No. 49) against Fisco. Hartford claimed that Fisco's negligence in repairing the warehouse created the warehouse's collapse. Specifically, Hartford claimed that the OCS policy did not provide coverage for the negligent acts of Fisco. In its complaint, Hartford asked for Fisco's contribution and indemnification.

On July 26, 2004, Fisco, in turn, filed a Fourth Party Complaint (Filing No. 27) against SSD, seeking, among other things, contribution should it be required to pay any damages. Specifically, Fisco claimed that SSD, under the terms of their contract, had been negligent in performing its duties. On January 25, 2005, SSD, in a cross-claim against Fisco, asked for Fisco's contribution and indemnification.[1] *See* Filing No. 45.

The four parties have now filed motions for partial summary judgment. In its motion, OCS contends that, under its insurance policy with Hartford, coverage is provided for all the damages the warehouse sustained. *See* Filing No. 72. In its motion, Hartford contends that, as a matter of law, coverage is limited and that it does not cover any additional damages. *See* Filing No. 77. Specifically, Hartford asserts that the policy does not cover damages relating to the collapse of the warehouse. *Id.*

In its motion, Fisco specifically seeks that this court declares that the contract it had with SSD is invalid and unenforceable. *See* Filing No. 57. And finally, in its motion, SSD

---

[1] This court has jurisdiction pursuant to 28 U.S.C. § 1332. There is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000.

4

contends that its liability is limited and that the contract is valid. *See* Filing No. 68. The court now turns to the analysis of the parties' motions for partial summary judgment.

## Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* Fed.R.Civ.P. 56(c). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In order to determine which facts are material, courts should look to the substantive law in a dispute and identify the facts which are critical to the outcome. *Id.* The movant bears the burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the movant meets this burden, the non-movant must set forth specific facts that demonstrate the existence of a genuine issue for trial. *Id.* Because the purpose of summary judgment is to isolate and dispose of factually unsupported claims, the non-movant must respond to the motion with evidence setting forth specific facts showing that there is a genuine issue for trial. *Id.* To successfully oppose the motion for summary judgment, the non-movant cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue. *Id.*

## Discussion

The resolution of the parties' motions for summary judgment lies in the answers to two questions. First, does OCS' policy with Hartford provide coverage for all the damages

5

sustained by the warehouse? Second, is the contract between Fisco and SSD enforceable? The court now turns to the analysis of these two questions.

### Does OCS' policy provide coverage for all the damages sustained by the warehouse?

As stated above, in its motion for partial summary judgment, Hartford contends that OCS' policy does not provide coverage for all the damages sustained by the warehouse as a result of its collapse. The court does not agree.

An insurance policy is a contract. *Callahan v. Washington Nat. Ins. Co.*, 608 N.W.2d 592, 597 (Neb. 2000). The construction of an insurance contract is purely a question of law. *Union Ins. Co. v. Land and Sky, Inc.*, 529 N.W.2d 773, 776 (Neb. 1995). The burden is on the insured to prove coverage where denied by the insurer. *Id.* at 714. However, the burden to prove that an exclusionary clause applies rests on the insurer. *See Thorell v. Union Ins. Co.*, 492 N.W.2d 879, 882 (Neb. 1992). Moreover, exclusionary clauses will be liberally construed in favor of the insured. *Modern Sounds & Systems, Inc. v. Federated Mut. Ins. Co.*, 262 N.W.2d 183, 187 (Neb. 1978).

In interpreting a contract, a court must first determine, as a matter of law, whether the contract is ambiguous. *Day v. Toman*, 266 F.3d 831, 836 (8th Cir. 2001) (applying Nebraska law). Whether ambiguity exists is an objective determination. *Id.* The court must give the terms of contracts their plain and ordinary meaning as ordinary, average, or reasonable persons would understand them. *Id.* When a clause can be fairly interpreted in more than one way, there is ambiguity to be resolved by the court as a matter of law. *Union Ins. Co.,* 529 N.W.2d at 776. Ambiguity will be resolved in favor of the insured. *John Markel Ford, Inc. v. Auto-Owners Ins. Co.,* 543 N.W.2d 173, 178 (Neb. 1996).

6

In this case, Hartford seeks to avoid liability by relying on three clauses found in the policy. These clauses state that coverage will not be provided for the negligent acts of others. The first policy clause is found at pages 27-28 of the policy and states:

> **B.** Exclusions . . .
>
> **2.** We will not pay for loss or damage caused by or resulting from any of the following: . . .
>
> **m.** Collapse of a building or any part of a building caused by use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

*See* Defendant's Exhibit 1, Filing 78 at pp. 27-28. The second clause is found at page 28 of the policy and states:

> **B.** Exclusions . . .
>
> **3.** We will not pay for loss or damage caused by or resulting from any of the following: . . .
>
> **c.** Faulty, inadequate or defective: . . .
>
> **(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading or compaction . . .
>
> **(4)** Maintenance; . . .
>
> But if loss or damage by Covered Cause of Loss results, we will pay for that resulting loss or damage.

*See* Defendant's Exhibit 1, Filing 78 at 28. The third clause is found at page 52 of the policy and states:

> As used herein, "Peril" means a cause of physical loss or damage to property. It has this meaning whether or not it is called a "Peril" or a "Cause of Loss" in this policy.
> Even if any of the terms of this policy might be construed otherwise, the following Perils, as described in Paragraph A. and B. below, are SPECIFICALLY EXCEPTED FROM THIS POLICY. WE DO NOT COVER OR INSURE AGAINST LOSS OR DAMAGE DIRECTLY OR INDIRECTLY CAUSED BY, RESULTING FROM, CONTRIBUTED TO OR AGGRAVATED

7

> BY, OR WHICH WOULD NOT HAVE OCCURRED BUT FOR, EITHER OF THESE PERILS:
>
> **A.** ACTS, ERRORS OR OMISSIONS by you or others in: . . .
>
> **3.** The design, specifications, workmanship, repair, construction, renovation, remodeling, grading or compaction or all or any part of the following:
> **a.** Land or building or other structures; . . .
>
> **4.** The furnishing or work, materials, parts or equipment in connection with the design, specifications, workmanship, repair, construction, renovation, remodeling, grading or compaction or any of the above property or facilities . . .
>
> *This exception **A.** does not reduce the insurance for loss or damage caused directly by a covered peril.*

*See* Defendant's Exhibit 1, Filing 78 at 52.

Hartford contends that Fisco negligently attempted to repair the warehouse, thus, Hartford is not liable. According to Hartford, Fisco's defective workmanship, repairs, remodeling or renovation caused the warehouse to collapse. Hartford contends that, under OCS' policy, the damages sustained by the warehouse are not covered. To support its position, Hartford points to the testimony of Fisco's superintendent which indicates that Fisco excavated too deep at the job site. Based on the superintendent's testimony and that of two experts, retained by Hartford, Hartford asserts that the negligence of Fisco created the collapse of the warehouse. *See* Filing No. 79, Hartford's brief in support at 18-19. Hartford contends that Fisco's negligence, which is not rebutted by OCS, is not covered by the policy. According to Hartford, these three exclusions clearly indicate that if OCS or another is negligent in the context of its repairs, workmanship, remodeling or renovation of the warehouse, then Hartford is not obligated to pay for any of the losses or damages that result therefrom. In other words, Hartford contends that the negligence of Fisco results in an automatic decline of coverage to OCS.

8

However, the policy also includes language which states that insurance is not reduced "for loss or damage caused directly by the covered peril." *See* Defendant's Exhibit 1, Filing 78 at 52. While it is clear that the policy could limit coverage when the acts or omissions of others result in additional damages, the policy does not limit coverage when the loss is occasioned by a covered peril in combination with an excluded one and the covered peril is the direct cause of loss. Under Nebraska law, *direct* means immediate or proximate as opposed to remote or incidental. *See Curtis O. Griess & Sons, Inc., v. Farm Bureau Insurance Company of Nebraska,* 247 Neb. 526, 530-31, 528 N.W.2d 329, 332-33 (Neb. 1995); *Cornhusker Cas. Co. v. Farmers Mut. Ins. Co. of Nebraska,* 268 Neb. 177, 680 N.W.2d 595, 601-02 (Neb. 2004). Here, it is undisputed that a mechanical breakdown is a covered peril. It is also undisputed that this breakdown created massive frost which heaved the warehouse's foundation. Consequently, the mechanical breakdown could be the direct or proximate cause of the warehouse's damages. Under the facts of this case, a trier of fact could find that the mechanical breakdown is the dominant cause of the warehouse's damages and Fisco's method of excavation incidental. *See Curtis O. Griess & Sons,* 247 Neb. at 530. If so, Fisco's negligence would be irrelevant and OCS would be covered under the policy for all the damages to the warehouse.

In this case, in order to avoid liability, it is not enough for Hartford to show that Fisco committed negligence. Under the policy, Hartford has to show that the mechanical breakdown is not the direct or proximate cause of the warehouse's damages. Consequently, Hartford's motion for partial summary judgment should be denied. OCS' motion for partial summary judgment is granted with respect to the issue of whether the policy could provide coverage for all the damages sustained by the warehouse despite the negligent acts of others. OCS' motion is, however, denied in all other respects.

**Is the contract between Fisco and SSD enforceable?**

In its motion for summary judgment, Fisco contends that the contract it entered into with SSD is unenforceable as a matter of law. Fisco offers two reasons to support that conclusion: (1) that Fisco never accepted the terms of the contract; and (2) that the contract is unenforceable because it indemnifies SSD from its own negligence. The court now turns to the examination of these issues.

A contract may be written or oral and can be shown by circumstantial evidence. *Tilt-up Concrete, Inc. v. Star City/Federal, Inc.,* 255 Neb. 138, 147, 582 N.W.2d 604, 610-11 (Neb. 1998) (citations omitted). To create a contract, there must be both an offer and an acceptance; there must also be a meeting of the minds or a binding mutual understanding between the parties to the contract. *Id.* Mutual assent to a contract is determined by the objective manifestations or intent by the parties, not by their subjective statements of intent. *Id.* Acceptance of an offer may be illustrated by words, conduct or acquiescence indicating agreement and may be indicated by the silence and inaction of an offeree. *Id.*

With respect to Fisco's contention that it never accepted the contract, Fisco states that the contract it received stated: "If accepted please sign and return one copy." *See* Filing No. 58 at 1. Fisco contends that it never returned the contract to SSD, thus, they did not accept it. However, as SSD notes, silence or actions can also create a binding acceptance. *Tilt-up Concrete,* 255 Neb. at 147. Here, it is undisputed that SSD performed work for Fisco without receiving the signed contract from Fisco. *See* Filing No. 58, Prochnow Deposition 59: 1-7; Filing No. 57, Statement of Undisputed Facts in Support of Summary Judgment at ¶ 17. Nothing in the record indicates that Fisco objected to SSD's performance. To the contrary, Fisco and SSD behaved as if a contract existed between

them. Consequently, the court determines that Fisco accepted the contract and its claim to the contrary is without merit.

Next, Fisco contends that, under Nebraska law, the contract is unenforceable because it violates Neb.Rev.Stat. § 25-21,187(1). Specifically, Fisco asserts that the contract's "indemnification" clause and the "risk allocation" clause violate this statute because these clauses indemnify SSD from its negligence.

Neb.Rev.Stat. § 25-21,187(1), in relevant part, provides:

> In the event that a public or private contract or agreement for the construction, alteration, repair, or maintenance of a building, structure, highway bridge, viaduct, water, sewer, or gas distribution system, or other work dealing with construction or for any moving, demolition, or excavation connected with such construction contains *a covenant, promise, agreement, or combination thereof to indemnify or hold harmless another person from such person's own negligence*, then such covenant, promise, agreement or combination thereof shall be void as against public policy and wholly unenforceable.

See Neb.Rev.Stat. § 25-21,187(1). With respect to the contract's indemnification clause, the court determines that this statute does not apply. The contract's indemnification clause does not insulate or hold SSD harmless from its own negligence. The indemnification clause of the contract states that SSD is to be held harmless against claims only when such claims arise "in whole or in part by the negligent act, omission, and/or strict liability of [Fisco], any directly employed by [Fisco] *(except SSD)." See* Filing No. 58, Contract at 2. Contrary to Fisco's argument, this clause does not indemnify or hold SSD harmless for its own negligent acts.

However, with respect to the contract's risk allocation clause, the court determines that this statute applies and that it restricts the application of such clause. The risk allocation clause, in relevant part states:

11

> SSD's total liability to the Client for any and all injuries, claims, losses, expenses, damages or claim expenses arising out this agreement, from *any cause or causes*, shall not exceed the total amount of $100,000, the amount of SSD's fee (whichever is less) or other amount agreed upon . . . *Such causes include, but are not limited to, SSD's negligence, errors, omissions, strict liability, breach of contract or breach of warranty.*

*See* Filing No. 58, Contract at 2. This clause clearly contains language which operates to insulate or limit SSD's liability for its negligent acts, thus, under Neb.Rev.Stat. § 25-21,187(1), that language violates public policy and is invalid. *New Light Co. v. Wells Fargo Alarm Servs.,* 247 Neb. 57, 525 N.W.2d 25 (Neb. 1994). However, this does not mean that the entire indemnification clause is rendered invalid and unenforceable. *"Under Nebraska law, only the portion prohibited by section 25-21, 187 is stricken from the indemnification clause and the language remaining may be interpreted to impose liability on the indemnitor."* See *Day v. Toman,* 266 F.3d 831, 834 (8th Cir. 2001) (citing *Hiway 20 Terminal, Inc. v. Tri-County Agri-Supply, Inc.,* 232 Neb. 763, 443 N.W.2d 872, 875-76 (Neb. 1989)). Accordingly, under Nebraska law, the court determines that the contract's risk allocation clause is invalid with respect to any claims arising out of SSD's negligence, but remains enforceable in all other respects. *Id.*

Based on the foregoing, the court determines that the contract between Fisco and SSD is valid and enforceable. The contract's risk allocation clause, however, is invalid with respect to SSD's negligent acts. Contrary to Fisco's assertion, these clauses are not invalid in their entirety or inconsistent with each other. Consequently, Fisco's motion for partial summary judgment is granted only with respect to the enforceability of this clause in negligence actions and is denied in all other aspects. SSD's motion for partial summary judgment, on the other hand, is denied with respect to the enforceability of the contract's risk allocation clause in negligence actions and is granted in all other aspects.

IT IS HEREBY ORDERED that:

1. OCS' motion for partial summary judgment (Filing No. 72) is granted with respect to whether the policy could provide for coverage of all the damages sustained by the warehouse and is denied in all other respects.

2. Hartford's motion for partial summary judgment (Filing No. 77) is denied.

3. Fisco's motion for partial summary judgment (Filing No. 57) is granted with respect to whether the contract's risk allocation clause is enforceable in negligence actions and is denied in all other respects.

4. SSD's motion for partial summary judgment (Filing No. 68) is denied with respect to whether the contract's risk allocation clause is enforceable in negligence actions and is granted in all other respects.

DATED this 17th day of March, 2006.

BY THE COURT:

s/ Joseph F. Bataillon
JOSEPH F. BATAILLON
United States District Judge